1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| ROB BOUSMAN, individually and as successor-in-interest to his deceased son, JAMES BOUSMAN,<br><br>                       Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, and DOES 1-25, inclusive<br><br>                       Defendants. | Case No.: 3:23-cv-1648-W-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [DOC. 4] AND GRANTING REQUEST FOR JUDICIAL NOTICE [DOC. 5-1]** |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        Pending before the Court is the Defendant County of San Diego's (the "County") motion to dismiss ([Doc. 4], "Motion") Plaintiff Rob Bousman's ("Plaintiff") Complaint ([Doc. 1], "Complaint") in its entirety.  In his opposition ([Doc. 5], "Opposition"), Plaintiff requests that the Court take judicial notice of an investigative report created by the County of San Diego's Citizens' Law Enforcement Review Board.  ([Doc. 5-1], "RJN".)  Defendant replied ([Doc 6], "Reply") and opposes the RJN ([Doc. 7], "RJN Opposition").

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. R. 7.1(d)(1).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.  The Court also **GRANTS** the RJN.

## I.   RELEVANT BACKGROUND

This case arises from the death of Plaintiff's son, James Bousman ("Decedent"), while in the custody of the San Diego County Sheriff's Department.  (*Complaint* at ¶ 5.) As alleged, Decedent was incarcerated in the Vista Detention Facility of the San Diego County Sherriff's Department.  There, on July 27, 2022, James Bousman died of "an overdose of . . . dangerous narcotic drugs, including methamphetamine and fentanyl, and/or some other dangerous narcotic drugs . . . ."  (*Id.* at ¶ 24.)

Plaintiff now brings this case individually and as Decedent's successor-in-interest against: (1) the County; (2) Does 1–12 (whom Plaintiff alleges "are sworn peace officers and/or deputy sheriffs and/or Custodial Officers and/or Special Officers and/or police officers and/or supervisors and/or investigators and/or Special Officers and/or Sheriff's Aids and/or Nurses and/or Doctors and/or other health officials and/or dispatchers and/or some other public officers, officials or employees of defendant COUNTY and/or some other public entity"); and (3) Does 13–25 (whom Plaintiff alleges "are supervisors and policy-making officials, including the Sheriff of the County of San Diego, the Undersheriff of San Diego County, the Sheriff's Assistant Sheriffs, Commanders, Captains, Lieutenants, Sergeants, Detectives and/or other Supervisory personnel employed by COUNTY and/or the County Executive Officer and/or Members of the Board of Supervisors of San Diego County, and/or Doctors and/or Nurses and/or other County Health Personnel / Officers / Officials and other County Officers / Officials"). (*Id.* at ¶¶ 7–9.)

Plaintiff's Complaint is no model of clarity.  Claims 1 and 2 assert that Does 1–12 violated Decedent's 8th Amendment rights (which protect *post-conviction* detainees from cruel and unusual punishment) in contravention of 42 U.S.C. § 1983 ("Section 1983"). (*Id.* at ¶¶ 16–44.)  *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir.

2

2016).  The Court understands the alleged 8th Amendment violations to essentially break down into two separate categories of conduct.  First, Plaintiff complains that Does 1–12 "proximately caused" Decedent's death because they either: (a) "sold or otherwise provided" Decedent with dangerous narcotics; (b) knowingly allowed other inmates to provide Decedent with dangerous narcotics; (c) were bribed by "other inmates" to permit the sale or distribution of dangerous narcotics within the Vista Detention Facility; or (d) were bribed by "persons who were not inmates" to allow the sale of dangerous narcotics within the Vista Detention Facility (collectively, the "Provided Narcotics Theory"). (*Complaint* at ¶¶ 18–21, 33–34.)  Second, Plaintiff complains that Does 1–12 are also "proximately" responsible for Decedent's death because: after Decedent's overdose began on July 26, 2022, Does 1–12 "saw [Decedent] collapsed in his jail cell, in obvious severe medical distress" during their "jail cell safety checks" and yet allowed him to "grovel[] on his jail cell floor for . . . upwards of several hours" instead of immediately summoning medical care (the "Failure to Summon Care Theory").  (*Id.* at ¶¶ 8, 36–40.)

Confusingly, Claims 3, 4, and 5 also assert Section 1983 claims against Does 1–12 for the Provided Narcotics Theory and Failure to Summon Care Theory.  (*Id.* at ¶¶ 45–89.)  The only difference being that the constitutional rights allegedly violated in Claims 3, 4, and 5 arise under the 14th Amendment (which protects *pre-trial* detainees from suffering injuries while in custody).  *See Castro*, 833 F.3d 1060 at 1067–68.  The Complaint does not make clear Decedent's conviction status at the time of his death or why Plaintiff is asserting both post-conviction 8th Amendment claims and pre-trial 14th Amendment claims over the same conduct.

Next, Claims 6 and 7 assert Section 1983 claims against the County and Does 13–25 under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) ("*Monell*") for having a "longstanding custom and practice" of: (a) "fail[ing] to discipline and/or terminate" jail staff involved in the conduct described by the Provided Narcotics Theory; and (b) failing to adequately train jail staff to identify when inmates are "suffering from severe medical distress" and to "immediately summon medical care" for

said inmates (*i.e.*, to prevent situations like the Failure to Summon Care Theory). (*Complaint* at ¶¶ 90–126.)  Plaintiff does not specify whether the 8th or 14th Amendment forms the basis of the *Monell* claims.

Despite being styled as separate claims for relief, Claims 8, 9, and 10 all effectively assert state law negligence claims against the County and Does 1–25.  (*See id.* at ¶¶ 127–87.)  Specifically, the claims state that: (a) the conduct of Does 1–12 (via both the Provided Narcotics and the Failure to Summon Care Theories) constituted negligence that "proximately caused" Decedent's death; and (b) the County's and Does 13–25's failure to discipline and train jail staff also constituted negligence that proximately caused Decedent's death by allowing both theories of liability to occur.  (*See id.* at ¶¶ 127–87.)

Lastly, Claim 11 asserts a claim under California Civil Code § 52.1 (the "Baine Act") against the County and Does 1–25 for acting with "deliberate indifference . . . to [Decedent's] constitutional rights" regarding the same conduct and under essentially the same theories as those described in the state law negligence claims.  (*See id.* at ¶¶ 188–91.)

The County moves to dismiss the Complaint, arguing that: (1) the identities of Does 1–25 are not pled with the requisite specificity; (2) it fails to meet the pleading standards of Federal Rules of Civil Procedure 8 and 12(b)(6); (3) *Monell* claims cannot be asserted against individual defendants and the Complaint fails to allege sufficient facts to establish a *Monell* claim against the County; (4) Plaintiff's federal law claims are precluded by qualified immunity; (5) the Complaint fails to state a valid claim of negligence under California law or, alternatively, the County is immune under California law; and (6) Plaintiff's Bane Act claim fails because the Complaint does not allege any affirmative interference with Decedent's constitutional rights or, alternatively, the County is immune under California law.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted."  FED. R.

Civ. P. 12(b)(6) ("Rule 12").  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  Additionally, in evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) ("Rule 8").  The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).  While well-pled allegations in the complaint are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Lastly, under Federal Rule of Evidence 201(b), courts may take judicial notice of undisputed facts that are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  "[P]ublic records and government documents available from reliable sources on the internet such as websites run by government agencies" count as "sources whose accuracy cannot be [reasonably] questioned."  *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, 2022 WL

3362279, at *2 (S.D. Cal. Aug. 15, 2022) (quoting *U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014)); *see Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds* by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)) ("a court may take judicial notice of 'matters of public record.'").  However, whether a source's accuracy "cannot reasonably be questioned," is "only part of the inquiry." *Khoja*, 899 F.3d at 999.  The Court must also assess whether the facts at issue "can be accurately and readily determined" from the source.  *Id.*  Thus, "[i]t is improper to judicially notice a [document] when the substance of the [document] 'is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes.'"  *Id.* at 1000.

**III.   DISCUSSION**

### A.    Request for Judicial Notice

Plaintiff asks the Court to take judicial notice of an investigative report created by the County of San Diego's Citizens' Law Enforcement Review Board ("CLERB"), which details certain findings made by the CLERB regarding Decedent's death (the "CLERB Report").  (*Opposition* at 31–33; *RJN* at 16.)  Specifically, Plaintiff asks the Court to take notice of the CLERB Report's findings that Decedent's death was "preventable" insofar as the County "failed to prevent" the "fentanyl [that] contributed to [Decedent's] death" from entering the Vista Detention Facility.  (*RJN* at 1–2, 16–17.)  In turn, the County argues that the Court should not take judicial notice of the CLERB Report because: (1) the CLERB reports are "not generally known within the trial court's territorial jurisdiction"; and (2) courts can only take judicial notice of "the fact that the [public] records exist, not the facts stated within the [public] records."  (*RJN Opposition* at 2–3.)

First, the County is incorrect that the Court cannot take judicial notice of the CLERB Report on the grounds that it is "not generally known within the trial court's territorial jurisdiction."  As cases cited by the County show, CLERB reports are judicially

noticeable under the "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" prong of Federal Rule of Evidence 201(b). *Dunsmore*, 2022 WL 3362279, at *2 (finding that a CLERB report is a source whose accuracy cannot reasonable be questioned).  Indeed, the CLERB Report is a public record available on a government website—specifically the County's own website[1]—and therefore qualifies as a source whose "accuracy cannot reasonably be questioned."  *See, e.g., U.S. ex rel. Modglin*, 48 F. Supp. 3d at 1381 (collecting cases), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies.'").

Second, the County's argument that courts categorically may never take judicial notice of facts contained within public records (only that the public records "exist") overstates Ninth Circuit precedent.  As the Ninth Circuit has made clear, courts may take judicial notice of facts contained within public records if said facts "can be accurately and readily determined" from the source.  *Khoja*, 899 F.3d at 999.  Unlike the documents at issue *Khoja*, the CLERB Report unambiguously concluded that fentanyl "contributed to [Decedent's] death" inside the Vista Detention Facility and that the County "failed to prevent" said fentanyl from entering Vista Detention Facility.  (*RJN* at 16–17.)  Such findings are not "subject to varying interpretations" and at no point does the County point to which of these findings, if any, it actually disputes.  (*See id.* at 2–3.)  At the same time, it is of little consequence whether the Court takes judicial notice of these findings in that they are entirely duplicative of the factual allegations in the Complaint (which the Court must assume as true for a motion to dismiss).  (*Compare id*. *with Complaint* at ¶ 24. ["As a result of the distribution of dangerous narcotic drugs, including . . . fentanyl . . .

---

[1] County of San Diego Law Enforcement Review Board, Cases for Summary Hearing for October 17, 2023 at 10 (last visited Apr. 3, 2024), https://www.sandiegocounty.gov/content/dam/sdc/clerb/docs/agendas/101723%20Regular%20Meeting%20Agenda.pdf.

[Decedent,] while he was incarcerated as an inmate at the Vista Detention Facility . . . suffered an overdose . . . ."].)

Accordingly, the Court grants Plaintiff's request and takes judicial notice of the CLERB Report's findings that Decedent acquired and consumed the fentanyl that contributed to his death while in the Vista Detention Facility.

**B.    Motion to Dismiss**

**1.    The Propriety of Doe Defendants in Federal Court**

The County argues, in a somewhat conclusory manner, that Does 1–25 must be dismissed because the Complaint does not allege sufficient facts regarding the identity of the Does 1–25 or how each Doe was personally involved in violating Decedent's constitutional rights.  (*Motion* at 10.)  Plaintiff in turn argues that the County has "no standing to seek dismissal of the action as to the nonmoving defendants."  (*Opposition* at 15, 25.)

As a preliminary matter, the Court disagrees with Plaintiff's contention that the County lacks standing to move to dismiss Does 1–25.  First, the case Plaintiff cites for the proposition that "moving defendants, obviously, [have] no standing to seek dismissal of the action as to the nonmoving defendants" is distinguishable.  (*Id.* at 15.)  In *Mantin v. Broad. Music, Inc.*, the Ninth Circuit held that six of thirty-four *named* defendants did not have standing to seek the dismissal of all thirty-four named defendants for failure to state a claim under Rule 12(b)(6).  248 F.2d 530, 531 (9th Cir. 1957).  *Mantin* made no reference to Doe or unnamed defendants.  Second, a number more recent federal court decisions have made clear that named defendants may properly seek the dismissal of Doe defendants.  *See, e.g.*, *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (reaching the merits of named defendant's motion to dismiss Doe defendants); *Hernandez v. San Bernardino Cnty.*, 2023 WL 3432206, at *3 (C.D. Cal. Jan. 26, 2023) (same); *Mendoza v. Cnty. of San Bernardino*,  2020 WL 2066142, at *3 (C.D. Cal. Feb. 21,

2020) (same); *Lak v. California Dep't of Child Support Servs.*, 2017 WL 6541922, at *1 n.1 (C.D. Cal. Dec. 21, 2017) (same); *see also Vuz v. Dcss III, Inc.*, 2020 WL 4366023, at *18 (S.D. Cal. July 30, 2020) ("Courts have dismissed complaints as to all defendants, even where only a few defendants move to dismiss, where *defendants were similarly situated and plaintiff had ample notice and opportunity to oppose the motion to dismiss* or where *the non-moving defendant was only sued because it was alleged to have controlled the defendant whose dismissal motion was granted*.") (emphasis added).

While the Federal Rules of Civil Procedure do not explicitly allow the naming of fictious or anonymous parties, "where the identity of the alleged defendant is not known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Hernandez*, 2023 WL 3432206, at *3 (*quoting Wakefield*, 177 F.3d at 1163).

Still, a "Section 1983 action must allege how each individual defendant directly participated in the violation of the plaintiff's rights." *Hernandez*, 2023 WL 3432206, at *3. Thus, while a plaintiff "may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3 and so on . . . he must allege specific facts showing how each particular doe defendant violated his rights." *Keavney v. Cnty. of San Diego*, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020). The reason behind these requirements is to give named defendants like the County "crucial notice of the nature of the claims" at issue. *Mendoza*, 2020 WL 2066142, at *4 (holding that the pleadings must be "sufficient to describe the involvement" of Doe defendants and to put "the County on notice of the nature of the claim against it.").

3:23-cv-1648-W-JLB

### a)   Does 1–12

Here, the Complaint alleges that Does 1–12 are "sworn peace officers and/or deputy sheriffs and/or Custodial Officers and/or Special Officers and/or police officers and/or supervisors and/or investigators and/or Special Officers and/or Sheriff's Aids and/or Nurses and/or Doctors and/or other health officials and/or dispatchers and/or some other public officers, officials or employees of defendant COUNTY and/or some other public entity." (*Complaint* at ¶ 8.)

First, according to the Plaintiff's Failure to Summon Care Theory, these individuals were working at the Vista Detention Facility on July 26, 2022, "saw" Decedent "collapsed in his jail cell" and yet left him "grovel[ing]" on the floor in "serious and obvious medical" distress for "upwards of several hours" instead of immediately summoning medical care. (*Id.* at ¶¶ 36–37.)

Second, according to Plaintiff's Provided Narcotics Theory, these same individuals are also the ones who "sold or otherwise provided" Decedent with the dangerous narcotics, or alternatively "kn[ew]" of and allowed other inmates to provide Decedent with the dangerous narcotics—possibly because they were being bribed. (*Id.* at ¶¶ 18–21.)

As in *Mendoza*, these allegations are sufficient to describe the involvement of Does 1–12 and to put the County on notice of the nature of the claims at issue. 2020 WL 2066142, at *4. While the County insists that Plaintiff must plead even more specific facts regarding Does 1–12, requiring Plaintiff to do so here would be unreasonable, especially considering Plaintiff's contention that the County has not provided its investigative report regarding Decedent's death to Plaintiff (an assertion that County does not dispute in its Reply). (*Opposition* at 24.)

The Complaint makes it clear enough that Does 1–12 are the Vista Detention Facility staff who were responsible for conducting "jail cell safety checks" at Decedent's cell on July 26 and 27, 2022 (staff whose true identities are undoubtedly known to the County). (*Complaint* at ¶ 36.) Assuming the above

allegations to be true, as the Court must, it is not clear what additional facts Plaintiff would be required to allege in order to sufficiently identify the actors. Plaintiff "should be given an opportunity through discovery to identify the unknown defendants." *Wakefield*, 177 F.3d at 1163; *Hernandez*, 2023 WL 3432206, at *3. To deny Plaintiff this opportunity would effectively grant the County's jail staff immunity from all wrongful death suits, in that almost no successor in interest would ever be able to allege sufficient facts against Doe defendants in such cases because the decedents cannot identify the allegedly responsible jail staff and the County apparently refuses to do so.

### b)   Does 13–25

The Complaint alleges that Does 13–25 are "supervisors and policy-making officials, including the Sheriff of San Diego County, the Undersheriff of San Diego County, the Sheriff's Assistant Sheriffs, Commanders, Captains, Lieutenants, Sergeants, Detectives and/or other Supervisory personnel employed by COUNTY and/or the County Executive Officer and/or Members of the Board of Supervisors of San Diego County." (*Complaint* at ¶ 9.)

According to Plaintiff, these individuals are "supervisors and policy-making officials" who have implemented a "longstanding custom and practice" of: (a) not disciplining jail staff whom they "know[]" to be selling or allowing the sale of dangerous narcotics within Vista Detention Facility; and (b) failing to adequately train Vista Detention Facility staff on how to "recognize when jail inmates are suffering form severe medical distress" and then "immediately summon medical care." (*Id.* at ¶¶ 100–04, 123–24 .) The Court later addresses whether each individual claim against Does 13–25 is proper (including whether the conduct complained of constitutes constitutional rights violations). For now, the allegations against Does 13–25 are sufficient to describe their alleged involvement and to put the County on notice of the nature of the claims at issue. That is, Does 13–25 are the Sheriff of San Diego County, the Undersheriff of San Diego County,

and the other policy-makers within the County of San Diego and the San Diego County Sheriff's Department responsible for the two "longstanding custom[s] and practice[s]" alleged.

### 2.   Section 1983 Claims (Claims 1–5)

The County next argues that Claims 1–5 (Section 1983 claims[2] against Does 1–12) fail because they violate Rule 8's "short and plain statement" requirement and fail to state a claim upon which relief can be granted under Rule 12—in that they assert contradictory pre-trial 14th Amendment and post-conviction 8th Amendment claims.  (*Motion* at 8–10.)  The County also argues Claims 1–5 must be dismissed, with respect to the Provided Narcotics Theory, for being conclusory and failing to meet the "plausibility standard" set forth in *Iqbal* and *Twombly*.  (*Id.* at 8–10.)

First, the County is correct that Claims 1–5 are contradictory, in that— without explanation—Claims 1 and 2 allege violations of Decedent's 8th Amendment rights (which protect post-conviction detainees from cruel and unusual punishment) while Claims 3, 4, and 5 allege violations of Decedent's 14th Amendment rights (which protect pretrial detainees from injury while in custody) regarding the same conduct.  *See Castro*, 833 F.3d at 1067–68; *Sanchez v. Cnty. of Los Angeles*, 2020 WL 9074714, at *3 (C.D. Cal. Apr. 28, 2020).  However, as the County acknowledges in its Motion, "it is permissible to plead in the alternative." (*Motion* at 9.)  Indeed, Rule 8(d) explicitly permits Plaintiff's contradictory theories.  Fed. R. Civ. P. 8(d) ("A party may set out two or more statements of a claim  . . . alternatively or hypothetically . . . . If a party makes alternative

---

[2] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  42 U.S.C. § 1983.

statements, the pleading is sufficient if any one of them is sufficient. . . . A party may state as many separate claims or defenses as it has, *regardless of consistency*.") (emphasis added).  Accordingly, the Complaint does not fail for alleging contradictory 8th and 14th Amendment claims.

Second, the County's assertion that Claims 1–5 must be dismissed with respect to the Provided Narcotics Theory for failing to "articulate a single fact to show how any of the [four alternative Provided Narcotics Theories]" are plausible is without merit.  (*Motion* at 9.)  To be clear, Rule 8 "does not require 'detailed factual allegations.'"  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).  Instead, it demands that complaints merely "contain sufficient factual matter, [that if] accepted as true . . . 'state a claim for relief that is plausible on its face.'"  *Id.* at 663 (*quoting Twombly*, 550 U.S. at 570).

As the County's Motion acknowledges, the Complaint alleges "(1) that jail staff sold or provided drugs to Decedent; (2) that inmates provided drugs to Decedent while jail staff failed to stop them; (3) that inmates provided drugs to Decedent while jail staff were paid by inmates to allow it to happen; or (4) that inmates provided drugs to Decedent while jail staff were paid by non-inmates to permit it to happen."  (*Motion* at 9 [citing *Complaint* at ¶¶ 18–21].)  Yet, the County fails to articulate what exactly about these allegations are insufficient to meet the plausibility standard of *Iqbal* and *Twombly*.  Is it the County's assertion that it is simply not an 8th or 14th Amendment violation for jail staff to sell or to knowingly allow the sale of dangerous narcotics to inmates (possibly because of bribery)?  If so, the County does not explicitly make that argument in its Motion and fails to provide the Court with the authority to reach such conclusion.  *See* FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion.  The motion must . . . state with particularity the grounds for seeking the order . . . .");  *Levi Strauss & Co. v. Connolly*, 2023 WL 2347433, at *8 (N.D. Cal. Mar. 2, 2023) ("[Defendant] has not identified any pleading deficiency in [plaintiffs] claims and

13

1   therefore has not met his burden to show that no claim has been stated."); *Carlson*

2   *v. Colorado Ctr. for Reproductive Med., LLC*, 2021 WL 5494273, at *3 (N.D. Cal.

3   Nov. 23, 2021) (finding that defendants' conclusory arguments that plaintiffs'

4   allegations did "not amount to any viable cause of action" were insufficient to

5   satisfy their burden to show that no claim had been stated).

6         With this in mind, the four above alternative theories are factual allegations

7   that state a plausible claim for relief.  If it is true that jail staff selling or knowingly

8   allowing the sale of dangerous narcotics to inmates is unconstitutional (an issue

9   this Order does not decide one way or the other), then allegations such as

10  "[Decedent] was sold or otherwise provided dangerous narcotic drugs by DOES 1

11  through 12" or "DOES 1 through 12 . . . were being paid by said other inmates . . .

12  to permit them to sell and distribute said dangerous narcotic drugs at the jail" are

13  factual allegations that state a plausible claim for relief.  (*See Complaint* at ¶¶ 18–

14  21.)  Assuming these factual allegations are true, as it must, the Court is unsure

15  what additional facts Plaintiff could be expected to plead that fall short of holding

16  Plaintiff to the inapplicable, heightened "who, what, when, and where" pleading

17  requirements of Federal Rule of Civil Procedure 9.  Accordingly, Claims 1–5

18  survive the County's Motion.

19         **3.    *Monell* Claims (Claims 6 and 7)**

20         Next, the County moves to dismiss Claims 6 and 7—*Monell* claims against

21  the County and Does 13–25 for failing to discipline and/or terminate jail staff

22  involved in conduct described by the Provided Narcotics Theory and for failing to

23  train jail staff to spot medical emergencies and summon medical care—on the

24  grounds that: (a) *Monell* claims cannot be pursued against individual defendants;

25  (b) Plaintiff has not alleged sufficient facts to show inadequate training of jail staff

26  regarding identifying medical emergencies and summoning medical care; (c)

27  Plaintiff has not alleged sufficient facts to show a *Monell* failure to discipline

28

and/or terminate claim regarding the Vista Detention Facility's staff's alleged involvement in the Provided Narcotics Theory.  (*Motion* at 12–14.)

Under *Monell v. Dep't of Soc. Servs. of City of New York*, municipalities such as the County cannot be held vicariously liable under Section 1983 for the actions of their employees.  436 U.S. at 692.  Instead, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 38 (1989) (emphasis in original).

Thus, to be liable under Section 1983 for a *Monell* claim, Plaintiff must show that either: (1) "a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity";  (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constated an act of official governmental policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  *Mendoza*, 2020 WL 2066142, at *6 (*quoting Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

### a)      Application of *Monell* Claims to Individual Defendants

Next, the Court addresses whether a *Monell* claim can be stated against individual defendants, Does 13–25.  "A *Monell* claim is, by definition, one brought against a public entity alone."  *Hernandez*, 2023 WL 3432206, at *5 (*citing Monell*, 436 U.S. at 689 n.55); *see Patino v. Cnty. of Monterey*, 2023 WL 375349, at *4 (N.D. Cal. Jan. 24, 2023) ("*Monell* claims cannot be asserted against Moving Parties in their individual capacities.  Any *Monell* claims against Moving Parties in their official capacities are duplicative of [plaintiff's] *Monell* claims against [the jail].  Accordingly, any *Monell* claims asserted against Moving Parties will be

dismissed without leave to amend."); *see also Sanchez*, 2020 WL 9074714, at *4 ("a 'suit against Sheriff Villanueva in his official capacity is equivalent to a suit against County.'").

Because *Monell* liability applies solely to entities and parties cannot be sued for *Monell* claims in their individual capacities, the Court dismisses Claims 6 and 7 as to Does 13–25 with prejudice.[3]

## b)   <u>Inadequate Training Regarding the Failure to Summon Care Theory</u>

The Complaint alleges that Does 13–25 "have known for many years now that inmates at the Vista Detention Facility . . . have been overdosing on illicit dangerous drugs . . . . [that inmate overdoses] have become frequent and recurring . . . . [and yet still] failed to adequately train Vista Detention Facility . . . jail personnel . . . on how to [1] recognize when jail inmates are suffering from severe medical distress that requires immediate medical attention and care . . . [and] [2] to immediately summon medical care for inmates who are suffering from severe medical distress."  (*Complaint* at ¶¶ 122–23.)

Courts permit *Monell* claims to proceed against municipalities under failure to adequately train theories "[i]n limited circumstances, [where] a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Keith v. City of San Diego*, 2023 WL 2347070, at *3 (S.D. Cal. Mar. 3, 2023) (*quoting Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  In such cases, plaintiffs are required to show that the municipality's allegedly inadequate training amounts to "deliberate indifference"—which is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or

---

[3] *But see Hernandez*, 2023 WL 3432206, at *4–5 (*citing Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011)).

obvious consequence of his action." *Id*.  Because there is no vicarious or *respondeat superior* liability for municipalities under Section 1983, a *Monell* claim will only lie where policymakers were "on actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights." *Id*.  Thus, " [a] *pattern of similar constitutional violations* by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*. (emphasis added).

However, in some "narrow" circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.  Such "narrow" circumstances exist when, "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio*, 489 U.S. at 390.  Yet, courts are understandably hesitant to find such "narrow" circumstances, because such theories often "collapse[] into *respondeat superior* liability"—which plainly does not exist under Section 1983.  *Horton by Horton v. Cty. of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019).

Here, the only factual allegation showing a pattern of conduct similar to the Failure to Summon Care Theory is the allegation that "failing to train jail officers . . . [has] been happening 'for many years now' . . . ." (*Opposition* at 17 [quoting *Complaint* at ¶ 123].)  Such conclusory allegations that fail to point to any specific similar prior incidents does not a "pattern" make.  As such, the Complaint fails to sufficiently allege a pattern of similar constitutional violations.

Plaintiff also asserts that the Failure to Summon Care Theory fits within the "narrow" exception hypothesized in *Connick*. (*Opposition* at 16.)  Except, the Opposition does not apply this rule beyond quote the language of *Connick*. (*Id*.)

Plaintiff points to no specific factual allegations and makes no argument to demonstrate how or why "the need for more or different training [regarding spotting medical emergencies and summoning medical care was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [County] can reasonably be said to have been deliberately indifferent to the need."  (*Id*.)  Allowing this *Monell* claim to proceed against the County would amount to nothing more than holding the County vicariously liable under Section 1983 for the alleged wrongdoings of its employees—which controlling law precludes.  Accordingly, the Complaint fails to state a failure to train claim against the County.

<u>c)</u>      <u>**Failure to Discipline or Terminate Staff Involved in the Provided Narcotics Theory**</u>

The Complaint also alleges a *Monell* claim against the County on the grounds that Does 13–25 have "known for many years now that . . . jail personnel at the Vista Detention Facility, have been selling and/or distributing, and/or otherwise facilitating the sale and/or distribution of, and/or have otherwise condoning and/or permitting inmates to sell and/or distribute, dangerous illicit and narcotic drugs, including methamphetamine, heroin and fentanyl, to inmates at the Vista Detention Facility in San Diego County, State of California, and that many inmates have died from the ingestion of such dangerous illicit and narcotic drugs" yet have failed to "disciplin[e]," "terminat[e]," and/or prosecut[e]" them. (*Complaint* at ¶ 103.)  Additionally, the Complaint alleges that these officials "covered-up the role of Vista Detention Facility personnel" in said deaths.  (*Id*.)

*Monell* claims based on a municipalities' alleged failure to discipline its employees are "best understood as a claim of ratification."  *Keith*, 2023 WL 2347070, at *4 (*citing Rabinovitz v. City of L.A*., 287 F. Supp. 3d 933, 967 (C.D. Cal. 2018) and *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003)).  "To state a cognizable claim based upon ratification, a plaintiff must allege an [that] official

with final policymaking authority approved a subordinate's action, as well as the basis for the action." *Id.* (*citing Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds by City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015), and *Paulos v. FCH1, LLC*, 685 F. App'x 581, 582 (9th Cir. 2017)).  In other words, "[t]he policymaker must have knowledge of the constitutional violation and actually approve of it," but a "mere failure to discipline [a subordinate] does not amount to ratification of [the subordinate's] allegedly unconstitutional actions." *Id.* (*citing Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) and *Sheehan*, 743 F.3d at 1231).  The policymaker must make "a deliberate choice to endorse" the subordinate's actions.  *Sheehan*, 743 F.3d at 1231.

Here, the Complaint's conclusory allegation that Does 13–25 had "known for many years" about the conduct of jail staff as described in the Provided Narcotics Theory is not a factual allegation that a County policymaker was aware of and approved of such conduct.  Even if the Court were to accept this conclusory allegation as true, it would still only show a "mere failure to discipline" jail staff, not "a deliberate choice to endorse" the conduct.

Accordingly, the Court dismisses Claims 6 and 7 against the County.  The dismissal is with prejudice because amendment would be futile.

### 4. <u>Qualified Immunity as to Federal Claims (Claims 1–7)</u>

The doctrine of "qualified immunity protects government officials 'from civil damages [resulting from federal law claims] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1243 (2007) ("The doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort

claims against government employees."); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040–41 (9th Cir. 2018) (holding that "qualified immunity is not available for those [California state law] claims.").  Thus, when evaluating claims of qualified immunity, courts consider: "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct."  *Reese*, 888 F.3d at 1037.

Here, the County argues that the Complaint's federal law claims (Claims 1–7) must be dismissed under the doctrine of qualified immunity because: "[t]he Complaint fails to present a cognizable constitutional violation, fails to describe how County employees violated such a right, and fails to show that such a right was clearly established at the time." (*Motion* at 14–15.)  This quotation is the full extent of the County's argument regarding qualified immunity.

As explained previously, conclusory assertions—that fail to articulate the specific  argument the County is making or fail to provide the Court with any relevant authority to assess such arguments—leave the Court with little choice but to deny the Motion.  Accordingly, Claims 1–7 survive the Motion on grounds of qualified immunity.

### 5.   State Law Negligence Claims and State Law Immunity (Claims 8–10)

The Complaint pleads Claims 8, 9, and 10 as distinct state law claims. Claim 8 is styled as a wrongful death claim under California Code of Civil Procedure section 377.60.  Claim 9 is styled as a negligence claim under California Civil Code section 1714.  Claim 10 is styled as a failure to provide medical care claim under California Government Code section 845.6 claim. (*Complaint* at ¶¶ 127–87.)  However, all of these claims assert negligence against the County and Does 1–25 for all of the same conduct outlined above. (*See Complaint* at ¶¶ 144–46, 164–66, 182–84.)  As such, the Court addresses these claims together.

The County moves to dismiss the Complaint's state law negligence claims against it on the grounds that: (1) "a public entity is not liable for injury arising from an act or omission except as provided by statute" (Cal. Gov't Code § 815); and (2) "[a] public entity is not liable for an injury to any prisoner" (Cal. Gov't Code § 844.6).  (*Motion* at 15–16; *Reply* 11.)  The County requests dismissal of the state law negligence claims against Does 1–25.  (*See id*.)

Section 377.60 of the California Code of Civil Procedure provides that certain surviving persons (including parents) may file a civil suit against those responsible for a decedent's "wrongful or negligent" death.  *Patino*, 2023 WL 375349, at *6 (*citing Quiroz v. Seventh Ave. Ctr*., 140 Cal. App. 4th 1256, 1263 (2006)).  Section 1714 of the California Civil Code is the "general tort provision[]" in California setting forth that each person has "a legal duty to act reasonably and with due care under the circumstances with respect to their own actions"—*i.e.*, to not act negligently.  *Summerfield v. City of Inglewood*, 96 Cal. App. 5th 983, 999 (2023); *Shalghoun v. N. Los Angeles Cnty. Reg'l Ctr., Inc*., 317 Cal. Rptr. 3d 641, 650 (2024), *as modified on denial of reh'g* (Feb. 22, 2024), *review filed* (Mar. 5, 2024).  Section 820 of the California Government Code clarifies that this general duty of care extends to public employees "to the same extent as a private person." And, under California Government Code section 815.2, "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative."

However, California Civil Code section 1714's general duty of care and California Government Code section 815.2's subsequent vicarious liability provisions are partially modified by section 844.6 of the California Government Code, which states that *public entities* are not liable for "injury to a prisoner." California Government Code section 844.6 goes on to clarify that "[n]othing in this

section exonerates a *public employee* from liability for injury proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6 (emphasis added). This provision is partially modified by section 845.6 of the California Government Code, which states that "a *public entity nor a public employee* is liable for injury proximately caused by the failure of the employee to *furnish or obtain medical care for a prisoner* in his custody"—but that a "public employee, and the public entity where the employee is acting within the scope of his employment, *is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care*." Cal. Gov't Code § 845.6 (emphasis added).

Taken together, this California statutory scheme stands for the proposition that: (1) public entities cannot be held liable for wrongfully or negligently injuring prisoners[4] but public employees can be[5]; unless (2) the prisoner's injury resulted from a failure to furnish medical care (in which case, neither the public employee or public entity are liable)[6]; except (3) when the public employee knew or had reason to know that the injured prisoner was in need of immediate medical care and failed to take reasonable action to summon such medical care (in which case, both the public employee and the public entity are liable)[7].

Accordingly, Claims 8, 9, and 10 must be dismissed with prejudice against the County with respect to: (a) the Provided Narcotics Theory; (b) the related failure to discipline/terminate jail staff theory; and (c) the failure to adequately train jail staff theory because they attempt to hold the County liable for the allegedly wrongful and/or negligent death of Decedent in violation of section 844.6 of the California Government Code. However, Claims 8–10 proceed against the

---

[4] Cal. Gov. Code § 844.6.
[5] *Id.*; Cal. Gov. Code § 820.
[6] Cal. Gov. Code § 845.6.
[7] *Id.*

1   County, insofar as it would be vicariously liable for Does 1–12's alleged failure to

2   reasonably summon immediate medical care under California Government Code

3   section 845.6.  The Court expresses no opinion on the state law negligence claims

4   against Does 1–25 because the County did not move to dismiss Claims 8–10

5   against those defendants.  (*See Motion* at 15–16.)

### 6.   Bane Act Claim (Claim 11)

7        Lastly, the Court addresses the County's challenge to the sufficiency of Claim 11,

8   alleging that the conduct of the County and Does 1–25 violated the Bane Act.

9   (*Complaint* at ¶¶ 188–91.)

10       The Bane Act creates civil liability for anyone who "interferes by threat,

11  intimidation, or coercion . . . with the exercise or enjoyment by any individual or

12  individuals of rights secured by the Constitution or laws of the United States, or of the

13  rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1.  As such,

14  courts typically require Bane Act plaintiffs to allege "(1) interference with or attempted

15  interference with a state or federal constitutional or legal right, and (2) [that] the

16  interference or attempted interference was by *threats, intimidation, or coercion*."

17  *Sanchez*, 2020 WL 9074714, at *9 (*quoting Allen v. City of Sacramento*, 234 Cal. App.

18  4th 41, 67 (2015)) (emphasis added).

19       Here, Plaintiff alleges that the County's and Does 1–25's conduct amounted to

20  "deliberate indifference to the serious and obvious risk to [Decedent's]" constitutional

21  rights.  (*Complaint* at ¶ 189.)  The County moves to dismiss this claim against it on the

22  grounds that: (a) the County is immune from Bane Act claims over prisoner injuries

23  under section 844.6; and (b) that the conduct complained of consists only of "deliberate

24  indifference" towards Decedent's safety (*i.e.*, "inaction and failure to protect Decedent

25  from harm"), not threats, intimidation, or coercion.  (*Motion* at 16–18.)  The Court

26  addresses each challenge in turn.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### a)      State Law Immunity

The same state law immunity principles that apply to Plaintiff's negligence claims also apply to Plaintiff's Bane Act claim.  *See O'Toole v. Superior Ct.*, 140 Cal. App. 4th 488, 504 (2006) ("[W]e reject plaintiffs' argument that [California's statutory immunity] is inapplicable to the Bane Act as a matter of law. . . . [A]bsent 'a clear indication of legislative intent that statutory immunity is withheld or withdrawn,' a specific statutory immunity applies to shield a public employee from liability . . . . [The Bane Act] contains no indicia reflecting an intent that public employees may be sued despite a statutory immunity that would otherwise apply."); *Spath v. Cnty. of Santa Clara*, 669 F. Supp. 3d 835, 848 (N.D. Cal. 2023) ("On the face of the complaint, [Plaintiff's] Bane Act claim, negligence claim, and medical negligence claim under MICRA are barred . . . by [the California Tort Claims Act]."); *Galley v. Cnty. of Sacramento*, 2023 WL 4534205, at *3 (E.D. Cal. July 13, 2023) (applying Section 845.6 to a Bane Act claim).

Therefore, the County is also immune from suit under the Bane Act regarding: (a) the Provided Narcotics Theory; (b) the related failure to discipline/terminate jail staff theory; and (c) the failure to adequately train jail staff theory—because they attempt to hold the County liable for the allegedly wrongful death of a prisoner in violation of Section 844.6.  However, the County is not immune from the Bane Act insofar as it would be vicariously liable for Does 1–12's alleged failure to reasonably summon immediate medical care under California Government Code section 845.6.  The Court expresses no opinion on the direct liability of Does 1–25 under the Bane Act, as the County has not moved to dismiss Claims 11 against those defendants.

### b)      Deliberate Indifference

Next, the Court addresses whether Bane Act claims may be pursued by prisoners under a theory of "deliberate indifference."  Courts have reasoned that since "deliberate indifference is closer to intentional conduct [than unintentional conduct]," liability exists under the Bane Act where the government official "knows of and disregards a substantial risk to inmate health or safety."  *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D.

Cal. 2013) (*citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) ("[A] prison official's deliberate indifference to serious medical needs is a coercive act [under the Bane Act] that rises above mere negligence . . . ."); *Cravotta v. Cnty. of Sacramento*, 2024 WL 645705, at *13 (E.D. Cal. Feb. 15, 2024) ("[A] Bane Act claim may be based on deliberate indifference to serious medical needs."); *Est. of Neil v. Cnty. of Colusa*, 2022 WL 4291745, at *9 (E.D. Cal. Sept. 16, 2022) ("Courts have also found that prisoners who sufficiently allege [that] officials acted with deliberate indifference to their medical needs in violation of their constitutional rights also adequately allege a Bane Act violation.").  In the context of deliberate indifference to the medical needs of prisoners, courts have held that a prisoner's Bane Act claim need simply allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d at 896 (*quoting Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)); *see Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018) (emphasis added) ("Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials 'knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening,' such as housing a prisoner in an inappropriate cell, *failing to provide treatment plans or adequate mental health care*, and failing to provide sufficient observations."); *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 802 n.31, as modified (Nov. 17, 2017) (citing with approval *M.H. v. County of Alameda*'s holding that a Bane Act claim can stated based on allegations of "deliberate indifference to prisoner's medical needs.").  While "mere negligence in diagnosing or treating a medical condition" does not give rise to a Bane Act claim, "prison officials or practitioners 'deny[ing], delay[ing], or intentionally interfere[ing] with medical treatment" does.  *M.H.*, 90 F. Supp. 3d at 896 (*quoting Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988)).

The Complaint alleges that Does 1–12 "saw [Decedent] collapsed in his jail cell, in obvious severe medical distress" during their "jail cell safety checks," yet allowed him to "grovel[] on his jail cell floor for . . . upwards of several hours" instead of immediately summoning medical care. (*Complaint* at ¶¶ 8, 36–40.) Such allegations illustrate a paradigmatic example of "know[ing] of and disregard[ing] a substantial risk to inmate health or safety." *M.H.*, 90 F. Supp. 3d at 896 (finding plaintiffs adequately alleged a Bane Act claim against defendants where decedent's death resulted from "a purposeful act or failure to respond to a prisoner's pain or possible medical need . . . ."). To the extent that the County may be vicariously liable for the conduct of Does 1–12 under California Government Code section 845.6, the Complaint states a valid Bane Act claim against the County.

Accordingly, Claim 11 must be dismissed with prejudice against the County regarding the Provided Narcotics Theory, the related failure to discipline/terminate jail staff theory; and the failure to adequately train jail staff theory. However, Claim 11 remains against the County to the extent it could be vicariously liable for the Failure to Summon Care Theory. Claim 11 also proceeds against Does 1–25, given that the Motion does not seek their dismissal.

### 7. Leave To Amend

In its Opposition, Plaintiff asks the Court for leave to amend the Complaint if the Motion is granted. (*Opposition* at 25.) Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Furthermore, leave to amend "should be granted with 'extreme liberty'" and only be denied when "it is clear . . . that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

Considering this circuit's preference for permitting amendment where not futile, the Court cannot conclude that Plaintiff could not possibly allege additional facts to state valid *Monell* claims against the County. Accordingly, the Court grants leave to amend the *Monell* claims (Claims 6 and 7) against the County.

However, amendment would be futile as to the Plaintiff's negligence and Bane Act claims (Claims 8–11) against the County regarding the Provided Narcotics Theory, the related failure to discipline/terminate theory, and the failure to adequately train jail staff theory—in that the County is immune from suits over the wrongful or negligent death of prisoners under section 844.6 of the California Government Code.  Similarly, Plaintiff's *Monell* claims (Claims 6 and 7) against Does 13–25 could not be saved by amendment because *Monell* claims cannot be brought against individuals.  If Plaintiff opts to amend his Complaint, the factual allegations in his amended complaint must be "consistent with" and may "not contradict the allegations in original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

In summary, this Order holds that:

- Claims 1–5 (Section 1983 claims against Does 1–12) survive the County's Motion.
- Claims 6 and 7 (*Monell* claims against the County and Does 13–25) must be dismissed entirely—with prejudice as to Does 13–25 and without prejudice as to the County.
- Claims 8–11 (state law negligence claims and a Bane Act claim against the County and Does 1–25) must be dismissed with prejudice against the County regarding the Provided Narcotics Theory, the related failure to discipline/terminate theory, and the failure to adequately train jail staff theory.  However, these claims remain against the County insofar as it could be vicariously liable for the actions of Does 1–12 regarding the Failure to Summon Care Theory.  These claims also survive in full as to Does 1–25 directly because the County has not moved for their dismissal.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** the RJN [Doc. 5-1] and **GRANTS IN PART** and **DENIES IN PART** the Motion [Doc. 4].  Claims 6 and 7 are dismissed

3:23-cv-1648-W-JLB

**WITH LEAVE TO AMEND** as to the County and dismissed **WITHOUT LEAVE TO AMEND** as to Does 13–25.  Claims 8–11 are **DISMISSED WITHOUT LEAVE TO AMEND** against the County regarding the Provided Narcotics Theory, the related failure to discipline/terminate theory, and the failure to adequately train jail staff theory.  Claims 1–5 remain in full as to all defendants, as do claims 8–11 as to Does 1–25.  However, claims 8–11 only remain against the County to the extent it could be vicariously liable for the actions of its employees regarding the Provided Narcotics Theory.

   **IT IS SO ORDERED.**
Dated:  April 5, 2024

_____
Hon. Thomas J. Whelan
United States District Judge